IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY DILBECK,                            )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        Case No. 13-1343-JWL
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
                    Defendant.           )
                                         )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

("Commissioner") denying certain benefits under Sections 1602 and 1614(a)(3)(A) of

the Social Security Act ("the Act"), 42 U.S.C. §§ 1381a, 1382c(a)(3)(A).  For the

reasons set forth below, the Court **affirms** the Commissioner's decision.

### I.      Background and Governing Standards

Plaintiff applied for a period of disability, disability insurance benefits, and

supplemental security income, based on an alleged disability beginning May 28, 2010.

In due course, Plaintiff exhausted proceedings before the Commissioner, and he now

seeks judicial review of the final decision denying benefits.  Plaintiff alleges that the

Administrative Law Judge (ALJ) erred in weighing medical opinions in the record.

The Court's review is guided by the Act. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." *See* 42 U.S.C. § 405(g). The Court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wall*, 561 F.3d at 1052; *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *See Gossett*, 862 F.2d at 804-05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. *See* 20 C.F.R. § 416.920; *Wilson v. Astrue*, 602 F.3d 1136, 1139

(10th Cir. 2010) (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *See Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *See Williams*, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. *See id.*

The Commissioner next evaluates steps four and five of the sequential process—determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, the claimant is able to perform other work in the economy. *See Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. *See Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006); *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams*, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy that are within the RFC

3

assessed.  *See id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, *all* medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. *See id.* §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011).   A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source)[1] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  *See id.* at 763 (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than

---

[1]The regulations define three types of "acceptable medical sources": a "treating source" is  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship; a "nontreating source" is an "acceptable medical source" who has examined the claimant but never had a treatment relationship; and a "nonexamining source" is an "acceptable medical source" who has not examined the claimant but provides a medical opinion.  *See* 20 C.F.R. § 416.902.

the opinions of nonexamining sources who have merely reviewed the medical record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983), *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982), and *Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also* Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *See id.* at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. *See id.* "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *See id.*

5

A treating source opinion that is not accorded controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *See id.* Those factors are: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion. *See id.* at 1301; 20 C.F.R. § 416.927(d)(2-6); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing *Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)). Moreover, when a treating source opinion is not given controlling weight, *all* medical opinions will be evaluated by the Commissioner in accordance with the regulatory factors. *See* 20 C.F.R. § 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). But, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his

6

decision for the weight he ultimately assigns a treating source opinion. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. *See Watkins*, 350 F.3d at 1301.

## II.   <u>Analysis</u>

In finding that plaintiff was not disabled within the meaning of the Act, the ALJ conducted the five-step analysis set forth above. In the first three steps, the ALJ found that plaintiff had not engaged in substantial gainful activity since May, 28, 2010, the alleged onset date, and that he had various impairments (coronary artery disease, hypertension, dyslipidemia, and substance abuse disorders), but that those impairments did not meet the severity of any impairments in the regulations' Listing of Impairments. The ALJ then determined plaintiff's RFC, and in steps four and five, the ALJ found that plaintiff was capable of performing his past relevant work as well as other jobs. In his brief to this Court, plaintiff challenges only the ALJ's determination of his RFC. The ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can only occasionally climb ladders, ropes, or scaffolds, only occasionally climb ramps or stairs, occasionally stoop, frequently kneel, crouch, crawl, and engage in activities requiring balance. He is limited to occasional bilateral overhead reaching and he should avoid concentrated exposure to extreme cold and extreme heat.

> In his written decision, the ALJ engaged in a thorough analysis in making that

RFC determination.  The ALJ reviewed plaintiff's medical history, and he found that the conclusions of two State agency medical consultants—whose opinions he followed in determining the RFC—were defensible and consistent with the weight of the evidence. The ALJ also noted that many of plaintiff's problems "appear to be connected to his substance abuse and poor compliance with his recommended treatment."  The ALJ found that plaintiff's statements concerning his impairments and their impact on his ability to work were "not fully credible in light of his available medical history, the reports of treating and examining medical professionals, the degree of medical treatment required to manage the claimant's impairments, and evidence of the claimant's capabilities with respect to his activities and overall lifestyle."  In particular, the ALJ noted that the evidence of plaintiff's activities was inconsistent with many of his allegations.  The ALJ also noted that plaintiff's history of low earnings, recent drug abuse, and criminal charges may have plausibly interfered with his ability to obtain employment and suggested a strategic motive for applying for disability.  Thus, the ALJ gave plaintiff's own opinions little weight.  Similarly, the ALJ accorded little weight to the opinions of claimant's daughter and to plaintiff's Global Assessment of Functioning (GAF) scores. Finally, the ALJ gave little weight to the opinions of Dr. J.D. Albright, a physician who examined plaintiff.

In challenging the ALJ's RFC determination, plaintiff takes issue only with the ALJ's decisions to accord little weight to Dr. Albright's opinions and to rely on the opinions of the agency consultants.  Thus, plaintiff has not challenged the ALJ's

credibility determination.  Nor has plaintiff argued that the ALJ employed an incorrect legal standard; accordingly, plaintiff must show that the ALJ's conclusions are not supported by substantial evidence.

On November 17, 2011, Dr. Albright filled out a form with check boxes to indicate various limitations for plaintiff, including limits for standing and walking of less than 15 minutes continuously and less than one hour throughout a day, and an indication that plaintiff can never kneel or crouch.  The ALJ stated the following with respect to Dr. Albright's opinions:

> The opinions of JD Albright, MD are given little weight.  Dr. Albright does not appear to have a particularly robust treating history with the claimant, and a November 17, 2011 statement limiting the claimant to something like sedentary work is unpersuasive.  The form itself is misleading, often providing no option for "continuous" or "no limitation" in various sub-categories and essentially directing Dr. Albright to find limitations in areas, such as "speak[ing]," "hear[ing]" and the various environmental factors, that are unmoored from the objective evidence (Exhibit 13F p.2).  Dr. Albright did not provide any explanation or context for these limitations, and did not offer any opinion as to their expected duration.  This opinion is unsupported and against the weight of the evidence, which indicates that the claimant is capable of performing work consistent with the above residual functional capacity.

The Court concludes that the ALJ's reasons for giving little weight to Dr. Albright's opinions are supported by substantial evidence.

First, the ALJ noted that Dr. Albright did not appear to have a "particularly robust treating history" with plaintiff.  Plaintiff does not dispute that he met with Dr. Albright on only three occasions.  On July 2011, plaintiff visited Dr. Albright as a follow-up to an emergency room visit the night before and to refill medications.  Plaintiff complained

of shortness of breath, but Dr. Albright stated in his notes that plaintiff exhibited "[n]o obvious shortness of breath."  Dr. Albright did not note any limitations, and he merely put plaintiff back on a particular medication.  In August 2011, plaintiff saw Dr. Albright for a follow-up examination.  Plaintiff stated that he had very little exercise tolerance and got short of breath easily.  Dr. Albright indicated in his notes that he had written a note stating that plaintiff was unable to perform physical work, but he did not provide any additional detail about plaintiff's limitations.  In November 2011, Dr. Albright noted that plaintiff's "main concern today is a disability form he needs filled out for his attorney."  Dr. Albright completed the check-box form, but he did not make any other findings relating to plaintiff's ability to work.

Plaintiff does not argue that his relationship with Dr. Albright extended beyond these three visits.  Plaintiff argues that Dr. Albright did review his medical records and examine him.  The ALJ did not treat Dr. Albright as a non-treating physician, however.  In light of the limited number of visits over a short period of time, the lack of findings by Dr. Albright in his notes, and plaintiff's visit primarily to obtain a completed form, the Court concludes that the ALJ's conclusion that the relationship was not "particularly robust" is supported by substantial evidence.

Second, the ALJ stated that the opinions contained in the form completed by Dr. Albright were unsupported.  Plaintiff does not offer any specific argument, however, to dispute the ALJ's statements about the form.  A review of that document reveals that the ALJ was correct in describing the form and its shortcomings—the form does not provide

10

a "no limitation" option with respect to some of the listed categories, nor does it provide a place to allow the physician to add any narrative statement. The ALJ was also correct, based on this record, in noting that Dr. Albright failed to provide (on this form or elsewhere) any explanation or elaboration concerning plaintiff's limitations, including with respect to the expected duration of those limitations.[2] Similarly, when Dr. Albright indicated that he had written a note for plaintiff in August 2011, he did not make any findings relating to plaintiff's specific limitations, and the note itself does not appear to be a part of the record. Thus, the Court concludes that the ALJ's conclusion that Dr. Albright's opinions were unsupported was itself supported by the record.

Third, the ALJ concluded that Dr. Albright's opinions were "against the weight of the record, which indicates that the claimant is capable of performing work consistent with" the ALJ's RFC determination. The Court concludes that that conclusion by the ALJ is supported by substantial evidence in the record. The ALJ thoroughly reviewed the evidence supporting his RFC determination. For instance, after plaintiff's heart

---

[2]Plaintiff cites *Anderson v. Astrue*, 319 F. App'x 712 (10th Cir. 2009), an unpublished opinion, in arguing that the ALJ improperly considered the lack of a narrative section on the form. In *Anderson*, however, the court merely rejected the Commissioner's categorical position that a check-box form without additional findings cannot constitute substantial evidence. *See id.* at 723. That court did not rule that the lack of such findings cannot be considered at all by the ALJ; to the contrary, the court stated that "[i]t is certainly correct to consider the amount of objective support for the conclusions expressed in treating physicians opinions and the reasoning the physicians provide." *See id.* at 722 (citing 20 C.F.R. § 404.1527(d)(3) for its statement that the more a medical source is supported by other findings, the more weight it is given). Thus, the ALJ here properly considered the lack of explanation from Dr. Albright concerning his check-box opinions.

surgery in July 2010, plaintiff's condition was described as "relatively benign," and he was "walking around without difficulty;" in August 2010, plaintiff was "feeling completely well" and in no apparent distress; in September 2011, plaintiff had "[a]verage exercise tolerance;" and in December 2011, he was "feeling generally well" with only "mild" shortness of breath and could perform "moderate physical activity." The ALJ also relied on plaintiff's substance abuse and poor compliance with his recommended treatment, which appeared to contribute to plaintiff's problems; evidence that plaintiff had engaged in various activities, which behavior was inconsistent with his allegations of serious limitations; and plaintiff's lack of credibility.

In his briefs to this Court, plaintiff has not disputed that evidence or argued that its consideration by the ALJ was improper. With respect to this rationale by the ALJ for giving little weight to Dr. Albright's opinions, plaintiff only argues in his principal brief that the ALJ did not explain specific inconsistencies between Dr. Albright's opinions and other evidence in the record. The Court rejects that argument, however, as the ALJ discussed at some length the bases for his conclusion that, contrary to Dr. Albright's opinions, plaintiff was not limited to sedentary work only. In his reply brief, plaintiff also cites evidence of low ejection fractions for his heart, but he has not pointed to any evidence that he suffered particular limitations resulting from or corresponding to those measurements. At any rate, as set forth above, this Court must not reweigh the evidence before the ALJ, and the ALJ's conclusion that Dr. Albright's opinions were not consistent with the weight of the evidence in the record is not unfounded.

Finally, plaintiff takes issue with the weight given by the ALJ to the opinions of the consulting physicians. Specifically, plaintiff argues that those physicians did not consider evidence arising after they authored their reports in December 2010 and April 2011. Plaintiff has not shown, however, that the later evidence is so inconsistent with those physicians' opinions as to render them unreliable. The ALJ did consider medical reports after April 2011, including a report from December 2011 (after Dr. Albright's completed his form) that indicated that plaintiff could perform "moderate physical activity." Plaintiff also argues that his condition worsened after April 2011, but, again, there is substantial evidence to the contrary, and plaintiff has not pointed to evidence that his limitations increased throughout that period.

In summary, the Court concludes that the ALJ's determination of plaintiff's RFC was supported by substantial evidence in the record, including plaintiff's lack of credibility, evidence of plaintiff's activities, and medical records and opinions. Accordingly, the Court affirms the decision of the ALJ.

IT IS THEREFORE ORDERED BY THE COURT THAT judgement shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

IT IS SO ORDERED.

Dated this 5th day of August, 2014, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

13